**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**EASTERN DIVISION**

NO: 4:07-CR-61-1-F
NO. 4:07-CR-61-2-F

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| JOY DALTON-ROBINSON | ) | |
| BASIL SYNCLAIR HARRIS | ) | |
| Defendants. | ) | |

---

This Cause comes before the Court on the "United States' Assertion of a Conflict of Interest," which would require the disqualification of Geoffrey Simmons from further representing Defendants Joy Dalton-Robinson and Basil Synclair Harris. **[DE-14]**. For the reasons that follow, the undersigned RECOMMENDS that Geoffrey Simmons be disqualified from representing the co-defendants in this criminal matter.

## Statement of the Case

The underlying facts in this case are undisputed. The Defendants, Joy Dalton-Robinson and Basil Synclair Harris, are charged in a ten-count Indictment alleging mail fraud and conspiracy to commit mail fraud. **[DE-1]**. Specifically, Joy Dalton-Robinson is charged in counts one through nine with mail fraud, and both Joy Dalton-Robinson and Basil Synclair Harris are charged in count

ten with conspiracy to commit mail fraud. **[DE-1].** Both Defendants are represented by Attorney Geoffrey Simmons[1]. **[DE-5].** In June 2003, Defendant Dalton-Robinson started working for a company called Nomaco, Inc. ("Nomaco") as a Quality Assurance Manager. **[DE-1, p. 1]**. As part of her duties, the Defendant was required to obtain quotes from companies to provide calibration services for Nomaco. Id. It is alleged that while she was employed with the company that she, her father, and Defendant Harris submitted invoices totaling $117,000.00 for calibration services that were never performed. **[DE-1, p. 10 & DE-14, p. 2]**.

During separate pre-indictment interviews, both Defendants gave conflicting accounts of their involvement with the calibration services and the submission of invoices to Nomaco. **[DE-14, pgs. 3-4]**. The Defendants made these statements while their attorney, Mr. Simmons, was present. Id. at 3. As a result, the Government now moves to disqualify Mr. Simmons from representing the co-defendants because his representation poses a conflict of interest. Id. at 4-5.

## Analysis

### A. The Defendant's Right to Counsel

The Sixth Amendment to the United States Constitution provides, "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel generally includes the right of a defendant to be represented by the attorney of his or her choice. Wheat v. United States, 486 U.S. 153, 159 (1988). As a result, courts "must recognize a presumption in favor" of a defendant's preferred

[1] It is important to recognize that Mr. Simmons has been appropriately sensitive to the potential conflict in representing both Dalton-Robinson and Harris. He has continued to represent both defendants because of the relationship between the two defendants who have each indicated their strong preference that he remain their attorney. In addition, Mr. Simmons has spent more than two years on this case and understands the difficulties which would face substitute counsel.

attorney and should not interfere with the attorney client relationship unless special circumstances arise. Id. at 164. A corollary to a defendant's right to counsel, is the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To effectively advocate for their clients, an attorney's representation must be free from conflicts of interest. Id. at 688. Thus, the Sixth Amendment's presumption in favor of a defendant's right to choose their attorney, can be "overcome by not only a demonstration of actual conflict, but by a showing of a potential serious conflict." Wheat, 486 U.S. at 164. Equally important, the federal judiciary has an interest "in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Id. at 160. Therefore, while recognizing that the co-defendants have the right to the attorney of their choice, this right is not absolute, Wheat, 486 U.S. at 163; it may be outweighed by the court's responsibility to protect the integrity of the judicial process.

**B. Joint Representation of Co-defendants**

In this case, the Government asserts that the joint representation of the co-defendants poses a conflict of interest. **[DE-14]**. "'[P]ermitting a single attorney to represent co-defendants . . . is not *per se* violative of constitutional guarantees of effective assistance of counsel,'[however,] a court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel." Wheat, 486 U.S. at 160-61 (quoting Holloway v. Arkansas, 435 U.S. 475, 482 (1978)). The "adequate steps" that the Court envisioned are outlined in Rule 44(c) of the Federal Rules of Criminal Procedure. The rule provides in pertinent part:

> [t]he court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to

> believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

The undersigned conducted a hearing pursuant to Rule 44(c) of the Federal Rules of Criminal Procedure. During the hearing, both Defendants stated under oath that they understood their right to be represented by different attorneys, but remain satisfied with their joint representation. In turn, they signed a waiver of possible conflicts of interest. However, the inquiry does not end here. The undersigned has an independent duty to disqualify counsel from representing co-defendants in certain circumstances despite a waiver.

## C. Attorney Disqualification

Rejecting a defendant's waiver of a conflict of interest and disqualifying counsel in joint representation cases is in the sound discretion of the trial court.

> [T]he district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential conflict exists which may not burgeon into an actual conflict as the trial progresses.

Wheat, 486 U.S. at 163.

The Defendants are charged under 18 U.S.C.§371 with conspiring to defraud the United States. **[DE-1]**. The Government alleges that during separate pre-indictment interviews, each Defendant made incriminating statements about the co-defendant's involvement in the conspiracy, while their attorney was present. **[DE-14, pgs. 3-4]**. As a result, the Government asserts that joint representation poses a conflict of interest because it could potentially cause problems with negotiating a plea agreement and testimony during trial. Id. at 4. In response, the Defendants contend that their interest is "not in conflict but in harmony." **[DE-23, p. 4]**.

The Supreme Court in Wheat set out the principles that govern a district court's determination whether to reject a waiver and disqualify counsel from representing multiple

defendants. In this respect, Wheat teaches that separate counsel should be appointed not only when an *actual* conflict exists, but also "in the more common cases" where a *potential* for conflict exists "which may or may not burgeon into an actual conflict as the trial progresses." Id. at 163. As the Supreme Court recognized, "a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly." Id. at 162. At this pretrial stage, "nascent conflicts of interest are notoriously hard to predict" and even defense counsel cannot know with certainty what conflicts might arise during trial. See id. at 162-63 ("It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants."). Thus, given this uncertainty pretrial "in determining whether to disqualify counsel for conflict of interest, the trial court is not to weigh the circumstances 'with hair-splitting nicety' but, in the proper exercise of its supervisory power over members of the bar and with a view to preventing 'the appearance of impropriety,' it is to resolve all doubts in favor of disqualification." United States v. Clarkson, 567 F.2d 270, 273 n.3 (4th Cir. 1977) (citation omitted).

Given the potential for conflicting defenses based on the Defendants' roles in the conspiracy, it is not difficult to imagine scenarios that might arise during trial in which counsel representing both Defendants might have conflicting incentives on whether and how to cross-examine certain witnesses or whether to object to the admission of certain evidence. Conflict-free counsel, by contrast, would not have such conflicting incentives. Thus, continued joint representation would

require constant vigilance during trial to identify conflicts that might arise at any point. Failure to anticipate these conflicts might ultimately result in a mistrial or an overturned conviction. And even if anticipated, a conflict arising in the midst of trial may be impossible to remedy merely by appointing separate counsel.

More apparent is the serious potential for a conflict to arise pretrial in the course of plea bargaining. Conflict-free counsel, acting for either defendant, would have a strong incentive on behalf of his or her client to explore a plea bargain that would minimize potential jail time in return for cooperation against the other defendant. Yet, such a plea bargain, by requiring the pleading defendant to maximize his or her cooperation with the government, would likely require the defendant to implicate the co-defendant. Indeed, courts have recognized that joint representation of conflicting interests is suspect for Sixth Amendment purposes precisely because it might prevent an attorney from exploring fully the opportunity for plea negotiations. While the court is not privy to the history of plea negotiations, if any, conflict-free counsel, acting on behalf of one defendant, might be instrumental in persuading the government to offer a plea agreement. See, e.g., Holloway, 435 U.S. at 489-90 (recognizing that joint representation might have prevented attorney from "exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable"); U.S. v. Tatum, 943 F.2d at 376 ("Exploring possible plea negotiations is an important part of providing adequate representation of a criminal client, and this part is easily precluded by a conflict of interest.") (quoting Mannhalt v. Reed, 847 F.2d 576, 582 (9th Cir. 1988)). Finally, even if no conflict arises before trial or during trial, if the defendants are convicted, it is likely that conflicts may arise at sentencing. While Defendant Dalton-Robinson is charged in all ten counts of

the indictment, Defendant Harris is charged in but one. Separate counsel, acting on behalf of Defendant Harris, might well argue at sentencing that he was only a minimal or minor participant in the conspiracy and, therefore, is entitled to a reduction in sentence for a mitigating role, and that any sentencing enhancement for a leadership or supervisory role in the conspiracy should be applied to Defendant Dalton-Robinson, but not to his or her client. Counsel representing both of these Defendants jointly, by contrast, would face the problem that the role adjustments under the U.S. Sentencing Guidelines depend in part on a comparison among co-conspirators. This Mr. Simmons would not be permitted to do.

Accordingly, after weighing both parties' arguments in light of the forgoing, the undersigned concludes that the joint representation of the Defendants constitutes an irreparable conflict of interest, which warrants the disqualification of Mr. Simmons as their attorney.

**Conclusion**

Accordingly, it is RECOMMENDED that Geoffrey Simmons be disqualified from representing Defendants Joy Dalton-Robinson and Basil Synclair Harris and that they be required to obtain separate attorneys by close of business January 4, 2007. If either or both Defendants are unable to hire separate attorneys, it is RECOMMENDED that they be directed to file financial affidavits, CJA form 23, and request that counsel be appointed to represent them.

DONE AND ORDERED in Chambers at Raleigh, North Carolina this 14th day of December, 2007.

William A. Webb
U.S. Magistrate Judge